### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

George D. McCarley
    Plaintiff

vs

City of Roanoke, a Municipal Corporation; Roanoke
Police Department; Penny Holloway, individually
and as Clerk of Municipal Court of the City of
Roanoke; Ellen Farmer, individually and as City
Manager of the City of Roanoke; Oliver Kitchens[1],
individually and as both Prosecutor and Municipal
Attorney for the City of Roanoke; Sanford
Holliday[1], individually and as Judge of
Municipal Court of the City of Roanoke; Henry
Bonner, individually and as Mayor of the City of
Roanoke; and Alabama Attorney General Troy King
for the State of Alabama; and Frank Nelson an
individual; and REMAX Results Realtor; and RE/MAX
International, a corporation; and David E. Avery
III, individually and as Employee Al. Dept. of
Revenue and Bill Thompson, individually and as
Employee Al. Dept. of Revenue; and; other
individuals and entities to be named following
discovery;

        Defendants (§1983 & 1985)

And;

Carol Knox, individually and as Examiner, Alabama
Department of Revenue; James Griggs, individually
and as Hearing Officer, Alabama Department of
Revenue; Sylvester Cannon, individually and as
Individual and Corporate Tax Division, Alabama
Department of Revenue; Cynthia Underwood,
individually and as Assistant Commissioner,
Alabama Department of Revenue, G. Thomas Surtees,
individually and as Commissioner, Alabama
Department of Revenue; State of Alabama
Department of Revenue; Pat Truitt, individually
and as Clerk of City of Roanoke; Charles Clack, a
resident of Roanoke individually and as poll
worker of City of Roanoke; Betty Ziglar,
individually and as former Mayor of City of
Roanoke. Co-conspirators & Defendants (§1985)

Case No.

3:07-CV-311-MEF

Jury Trial
Demanded

---

[1] USCA §1985 Note 168: Prosecutor and Attorney held liable if acting under
color of state law;  White v. Bloom C.A.Mo. 1980, 621 F. 2d  276

**THE FACTS:**   Charges of 42 USC §1983 & §1985 are filed against many conspirators.  McCarley has suffered retaliatory[2] acts against his person, property, and family due to grudges of incumbents McCarley has tried to defeat.  McCarley ignored petty acts until the illegal arrests.  He filed civil rights complaint (3:06cv663) in July 2006.  The court dismissed that charge without prejudice.  The following is a high level chronology including <u>new illegal arrest</u> and <u>secret witness</u> charges:

I.     McCarley demonstrates state-wide political capabilities, 1988.
II.    McCarley runs for Mayor of Roanoke, 1992; defeats incumbent Mayor Bonner but takes third place finish
III.   1996 – defeated incumbent Bonner gains seat on Utility Board and bills McCarley over $400 for one month of water service
IV.    McCarley runs for Mayor again, 1996 – Fiance' dies from unusual circumstances (190 miles away)
V.     McCarley runs for Mayor, 2000.  City refuses to count votes
VI.    Attorney General Bill Pryor, now Appellate Justice Bill Pryor approves city action of refusing vote count
VII.   2001 illegal arrest of McCarley.  On night he was to appear in court to learn of fine for expired license plate, his sister was hospitalized for a surgical relapse.  He went to hospital instead.
VIII.  Two days following point above, McCarley is swarmed by 4 police officers and arrested on failure to appear.  Front page mugshot!
IX.    One month later, recuperating sister is ordered to court for "trumped up" Municipal Ordnance violation.  Pictorial evidence disputed any violations and at court, her case was said to be dismissed, although discovery shows her record marked guilty.
X.     McCarley illegal foreclosure (ALMD 3:06cv00091) prosecuted by City Attorney Oliver Kitchens and timed to prevent McCarley entry to 2004 mayoral race.  This illegal act proceeded through Alabama Appellate system and to Supreme Court of US.
XI.    Remax Realtor Frank Nelson persists attempting to sell illegally foreclosed property while under litigation.
XII.   McCarley complains to Remax corporate headquarters 2004, 2005, 2006
XIII.  Disputed property sold by Nelson having been served notice of lien and ALMD case progress.
XIV.   Nelson files false and malicious charges in May2006.  Sheriff declines involvement, then City issues warrant.
XV.    McCarley complains to city that clerk should never have issued a warrant that was so laughingly false.  A) Nelson alleged it was either head or ear, B) was so close to police station that had alleged charges been true, police officers would've been on scene in seconds and no warrant would've been required.
XVI.   Roanoke executes false arrest of McCarley and plaintiff then files Civil Rights charge to ALMD 3:06cv663s
XVII.  Roanoke Court awaits results of case above before scheduling trial
XVIII.     Four different defense attorneys appointed
XIX.   Roanoke Court refuses to issue subpoena or discovery orders
XX.    Secret Witness used at trial following city discovery refusal
XXI.   McCarley convicted on testimony of non-disclosed secret witness.
XXII.  New Civil Rights §1983 & §1985 filed

---

[2] **Pursuant to plan, plaintiff illegally arrested on . . .charge, . . . as malicious revenge for criticism of city: Beauregard v Wingard 230 F. Supp 167 (SD Cal (1964); 362 F 2d 901 (1966)**

## TABLE OF CONTENTS

2       The Facts Summary

3       Table of Contents

3       Index of Cases and Statutes

5       Introduction

5       Jurisdiction

11      Factual Allegations

11          Constitutional Violations

13          Unlawful Arrest

16          Secret Witness Amend. VI

17          Denial of Civil Rights

19          Conspiracy to Deny Civil Rights

24          Overt Acts of Conspiracy

29      Damages

30          §1983 Damages

31          §1985 Damages

34      Proof of Service

34      Service Addresses and Locations

35      Damages Summary Worksheet

## INDEX

18      18 USC §245

5       28 USC §1331

5       28 USC §1343 (3)

1,2,    42 USC §1983            page 5,7,10,14,18,30,32,33,35

1,2,    42 USC §1985            page 5,14,31,32,33,34,35

5,32    R.S.1979, 42 USC §1983 and §1985
8       ALABAMA CONSTITUTION OF 1901,

8      Alabama Code of 1975        page 13,27,34

21     §11-43a-27  Monthly Statement of Expenses to be published
21     §11-43a-29  Annual Financial Statement to be published
21     §11-43a-94  ibid
11     §12-14-1 Municipal Court Jurisdiction
11     §12-14-6 Jury Trial
34     §12-14-16 Municipal reporting of Court Procedures
12     §12-14-32 Judges authorized to make arrests

5,9    FIRST AMENDMENT TO UNITED STATES CONSTITUTION
18,32
5,9    FIFTH AMENDMENT TO UNITED STATES CONSTITUION
18,32
5,9    SIXTH AMENDMENT TO UNITED STATES CONSTITUION
18,32
5,9    FOURTEENTH AMENDMENT TO UNITED STATES CONSTITUION
18,32
2,13   Beauregard v Wingard 230 F. Supp 167 (SD Cal (1964);
16         362 F 2d 901 (1966)


7      Hargrove v. City of Cocoa Beach (1957 Fla) 96 So. 2d 130,
          60 ALR 2d1193


4,7,   Monroe v Pape (1961)  365 US 167, 5 L Ed 2d 492,
18         81 S ct 473


10,15  Murray v. City of Chicago, C.A.Ill.1980 634 F.2d 365


11     People v. Hernandez, N.Y.AD. 2 Dept.1993, 600 N.Y.S. 2d 491


6      Pierson V. Ray 386 US 547, 18 L Ed 2d 288, 87 S Ct1213 (1967)


16     UNITED STATES v. Aaron Burr, F.Cas. No. 14692d (C.C.Va., 1807)


16     U.S. v. Brown, C.A.Ga. 1977, 555 F.2d 407


16     U.S. v. Scott, C.A.Mich. 1975, 518 F.2d 261


1      White v. Bloom C.A.Mo. 1980, 621 F. 2d 276


**City Official §35  15 Am Jur Trials Police Misconduct** City's
failure  to  take  action  in  face  of  malpractice  may  be
actionable.

Superior Officer §30  **15 Am Jur Trials Police Misconduct
Police Immunity denied**

PubLaw 90-284, 90th Cong, HR 2516, 82 Stat 73

Am Jur Trials 15:649 Fn 13:  It is not necessary to plead specific
intent . . . to state federal claim under §1983; Monroe v Pape

**fINTRODUCTION to COMPLAINT**

1.   This complaint is an action at law to redress the deprivation of civil rights under color of law, statute, ordinance, regulation, custom, or usage of a right, privilege and immunity secured to plaintiff by the First, Fifth, Sixth and Fourteenth Amendments to The Constitution of the United States (R.S. 1979, 42 USC §1983 [and §1985]) and arising under law and statutes of the State of Alabama.

Defendants named above, and each of them, is charged with violation of both 42 USC §1983 and 42 USC §1985.   Co-conspirator's named above are charged with violation of 42 USC §1985.

**JURISDICTION**

2. Jurisdiction of this court is invoked under 28 USC §1343 (3), being an action authorized by law to redress the deprivation under color of state law, statute ordinance, regulation, custom and usage of a right, privilege and immunity secured to plaintiff by the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum or value of ten thousand dollars ($ 10,000)  28 USC §1331.

4.   During all times mentioned, plaintiff, and each of them (Defendants and co-conspirators), were, and still are, citizens of the United States; they resided, and now reside, in or near City of Roanoke, County of Randolph, State of Alabama.   Frank Nelson and REMAX Results company are State of Georgia residents, and RE/MAX International is domiciled in State of Colorado.   Morris Hardwick Schneider is domiciled in Atlanta, Ga.  Each of them is of full age.

5.   a)At all times mentioned, defendants Penny Holloway, Ellen Farmer, Oliver Kitchens, Sanford Holliday, Henry Bonner, were duly

appointed, employed (or elected) presently acting officer(s) of the city of Roanoke.   Frank Nelson is employed with REMAX Results.

> 15 Am Jur Trials (15:629 §34) " However, if Counsel has a case in which the facts clearly show a conspiracy, . . . he may wish to join the judge as a party defendant, this route having been left open in Pierson V. Ray (1967)386 US 547, 18 L. Ed 2d 288, 87 S Ct. 1213. Footnote 1 §34.

b)Defendant Troy King for State of Alabama, became Attorney General in year 2000, replacing former Attorney General Bill Pryor, and Bill Pryor was Attorney General during balance of this conspiracy.

c)At times mentioned herein, co-conspirator and former Mayor Betty Ziglar was the duly elected and previously acting Mayor of the City of Roanoke (92-2004); Pat Truitt, at all times mentioned herein is a Clerk of the City of Roanoke; and, Charles Clack was appointed Vote Official.

d)At all times mentioned here since 2005, Co-conspirator's Carol Knox, James Griggs, Sylvester Cannon, Cynthia Underwood, David Askew, and Bill Thompson, and, G. Thomas Surtees were the duly appointed and presently acting or employed, appointed, or elected officers of the Alabama Department of Revenue, State of Alabama.

e)At all times material to this conspiracy complaint, Co-conspirator's were employed-elected-or appointed as officers of the Alabama Department of Revenue, State of Alabama; or, were duly employed, elected, or appointed and acting officers for functions of The City of Roanoke and were acting under color of their official capacity, and their acts were performed under color of statutes of the State of Alabama. Department of Revenue Co-Conspirators were the servants, agents, and employees of their codefendant, the State of Alabama and Alabama Department of Revenue, so that their acts are imputed to the State of Alabama; and further, Co-conspirators acts were under color of law of the State of Alabama.

f)Roanoke based Co-Conspirators were servants, agents, and employees of co-defendant, The City of Roanoke, the State of Alabama, so that their acts are imputed to City of Roanoke and State of Alabama; and further, Co-conspirators acts were under color of law of the State of Alabama.

6. At all times material to the complaint, Roanoke and Alabama defendants were employed, appointed (or elected) as officers of the City of Roanoke, or State of Alabama, and were acting under color of their official capacity, and their acts were performed under color of statutes and ordinances of the City of Roanoke, State of Alabama, or, statutes of the State of Alabama.    Defendants were the servants, agents, and employees of their co-defendant, City of Roanoke, so that their acts are imputed to City of Roanoke; and defendant's acts were under color of law of State of Alabama. In 1957, in the landmark case of Hargrove v. City of Cocoa Beach (1957 Fla) 96 So. 2s 130, 60 ALR 2d 1193, the Florida Supreme Court broadly rejected municipal immunity for the torts of employees performing governmental functions.    The court said:

> "To continue to endow municipal corporations with sovereign
> divinity appears to us to predicate the law of the Twentieth
> Century upon an Eighteenth Century anachronism.    The decision
> notes that sovereign immunity was created by judges and can be
> abolished by judges"

7.    During all times mentioned, defendants and Co-Conspirators were acting pursuant to orders and directives from superior defendants, and what they believed to be the legal statutes of the City of Roanoke and of the State of Alabama.    This point is supported by the case of Monroe v Pape (1961)  365 US 167, 5 L Ed 2d 492, 81 S ct 473, stating;

> "In an action under the Civil Rights Act (42 USC § 1983)
> police officers and city officials can be named as parties
> defendant even though they had no specific intent to deprive
> the plaintiff of rights guaranteed under the Federal
> Constitution."

8.    At all times mentioned here (defendant) City of Roanoke was a municipal corporation of the State of Alabama, organized under the laws of the State of Alabama; and the City of Roanoke provided each of the individual defendants official titles, official workspace, and facilities for the conduct of their alleged activities.  The City of Roanoke is the municipal corporation in whose name the individual defendants, and each of them, performed all acts and omissions alleged here.

At all times mentioned here (defendants) Frank Nelson was employed and advised by REMAX Results, a division of RE/MAX International and Morris    Hardwick    Schneider,    (attorneys).    The    corporations    and professional firms in this paragraph are incorporated and organized under the laws of several states, principally Alabama, Georgia, Colorado.

The City of Roanoke, State of Alabama was incorporated under the laws of the State of Alabama with authority to sue and be sued in its corporate name and it waived any governmental immunity from lawsuits and gave consent to be sued by procuring and maintaining in force a comprehensive liability insurance policy being policy # 0090256045082 of the ALABAMA MUNICIPAL INSURANCE CORPORATION (AMIC), a division of The Alabama Association of Municipalities, effective from January 2006 to January 2007.  This policy provides coverage for Police liability, and, Municipal Officer Errors and Omissions.

The State of Alabama was incorporated under the laws of The Alabama Constitution of 1901 and the Alabama Code of 1975 with authority to sue and be sued in its corporate name.  Following many telephone calls to the Attorney General office, plaintiff has been unable to determine the presence of insured liability of State of Alabama regarding Lawsuits.

9.    During all times mentioned herein the individual defendants and co-conspirators and each of them separately and in concert acted under

color and pretense of law to wit: under color of the statutes, ordinances, regulations, customs and usage's of the State of Alabama, the County of Randolph and the City of Roanoke.    Each of the individual defendants and co-conspirators, plus other persons unknown to plaintiff, separately and in concert, engaged in the illegal conduct here mentioned to the injury of plaintiff(s) and deprived plaintiff(s) of the right, privileges, and immunities secured to plaintiff(s) by the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

10a.    The Roanoke Municipal Court and its individual members, (defendants herein) who are agents and employees of defendants Roanoke Municipal Court, and City of Roanoke, together with persons unknown to plaintiff, acting under color of law, have subjected plaintiffs and other persons to a pattern of conduct consisting of:

    a. denial of due process rights; and,
    b. deprival of liberty in violation of due process; and,
    c. Improper Seizure; and,
    d. Improper warrant issuance; and,
    e. Abuse of Judicial authority; and,
    f. Inconsistent application of State and Federal law; and,
    g. ordering arrests for minor offenses, exceeding authority; and,
    h. use of inhuman court calendar scheduling tactics; and,
    i. refusing trial continuance for serious medical distress; and,
    j. refusing trial continuance for serious family emergency; and,
    k. operating city court for revenue generation and not justice; and,
    l. denial of right for counter-charge warrants; and,
    m. acting in absence of judge or prosecutor; and,
    n. insists all cases appear before Judge to generate revenue; and,
    o. issued warrants on unsupported testimony of conflicted witnesses;

in denial of rights and/or in conspiracy to deny rights, privileges and immunities guaranteed plaintiffs and other citizens under the Constitution of the United States.

10b.    This systematic pattern of conduct, actions and conspiracy consists of a large number of acts of unconstitutional deprival of liberty via improper, uncalled for arrest ordered by and visited on

plaintiffs and other citizens by members of the Roanoke Municipal Court, and agents and employees of City of Roanoke acting in concert with or under the superior orders of persons unknown to plaintiffs, and under color of law. The acts of illegal arrest, while carried out under color of law, have no justification or excuse in law, and are instead, gratuitous, illegal, improper, retaliatory, and unrelated to any activity in which City Court may appropriately and legally engage in the course of protecting persons or property, or ensuring civil order.

10c. Despite the fact that they knew or should have known of this pattern of conduct and conspiratorial activity; the City of Roanoke, the Roanoke Municipal Court, State of Alabama and other defendants, have taken no step or effort to order a halt to this conduct, to make redress to these plaintiffs or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees or agents; and defendants have in fact praised and commended their agents and employees, such praise having the effect of encouraging their agents and employees to continue this pattern of conduct. Murray v. City of Chicago, C.A.Ill.1980 634 F.2d 365 provides the following response:

> 28 USCS 1983, note 3341 "When plaintiff sustained violation of constitutional rights by being arrested and detained pursuant to invalid warrant, someone was surely at fault for failing to establish or execute appropriate procedures preventing such serious malfunction in the administration of justice, . . ."

In regard to both City and State failure to prevent, the case of In fact, City of Roanoke is planning Grand Opening for a new Courthouse and expanded Jail complex; therefore it is important that the behavior of the defendants, and all of them, be modified now.

10d. In addition to subparagraphs above, said conspiracy and intimidation tactics of State of Alabama Department of Revenue have

joined with defendants tactics, and each of them, clearly designed to interfere with plaintiff exercise of rights in paragraph 9, plus:

Right and Freedom of Free Speech; and,
Right and Freedom to participate in elections process; and,
Conspired to coerce plaintiff away from political activity; and,
Inject duress/emotional response by notification at death of friend; and,
Conspiring to prevent compliance of plaintiff in Holiday season.

**FACTUAL ALLEGATIONS: CITY AND STATE VIOLATION OF ALABAMA CODE OF 1975; CITY AND STATE VIOLATE US CONSTITUTION DUE PROCESS CLAUSE**

11. Roanoke Municipal Court is governed by statute(s) found in Alabama Code of 1975, Title 12 Chapter 14. Al Code §12-14-1 authorizes Municipal courts jurisdiction only for violation of municipal ordinances. There is no municipal ordinance involved in the McCarley arrest. Further, and according to Al Code §12-14-6, Jury trial is not authorized for municipal courts. In both respects, Roanoke Municipal Court and each of them (defendants) grossly exceeded authority granted by the State of Alabama, in their act of making the McCarley arrest. Because State of Alabama did not authorize Jury Trials in Municipalities, City of Roanoke fully violates the Founding Fathers intent for Due Process, and fully violates The Alabama Constitution and Constitution of the United States.

12. Neither the Judge, nor the Court, nor the city is authorized to make arrests as in the case of the Plaintiff arrest. While police are statutorily and morally obligated to make arrests in cases of violent offenders or others presenting a clear danger to innocent people and property, such cases would and should be prosecuted by a District Attorney in either Alabama District or Circuit Court. Municipal Court is not authorized to be involved in such cases. Therefore the Municipal Court, the Judge, and the City of Roanoke and each defendant violate Alabama law via prosecution of any non-municipal statute.

13.    The Judge, Roanoke Municipal Court, and City of Roanoke have abused authority with regard to fines and bonding.    Because arrest has not been authorized by Alabama Code; Judge, Court, and City are guilty of abuse of authority by ordering individuals be bonded or arrested.

14.    State of Alabama has written into law, statues that clearly violate the Due Process Clause of the United States Constitution.    As indicated in paragraph 11, Al Code §12-14-6 denies municipal courts empanelling of juries.    Then in Al Code §12-14-32, State of Alabama Code has authorized only Judges to make arrests.    These contradictory statutes present a dire constitutional conflict.    Irregardless of a theory of "Founders Original Intent" or "Strict Construction", this contradiction clearly violates the Due Process clause.    If no jury is authorized, then the Judge assumes powers not granted and fully prohibited by the US Constitution, thus in full and complete violation of the United States Constitution.    Therefore, State of Alabama has written legislation in violation of US Constitution, Roanoke Municipal Court has utilized those statutes in full violation of US Constitution, Municipal Court Judge has violated his schooling, his Oath, and his moral obligation to uphold US Constitution, and The City of Roanoke has fully encouraged the Judge the Prosecutor and Court to violate US Constitution.

15.    State of Alabama further violated the Due Process clause and, continues to violate Al Code by failing to "police" Municipal Courts.    Al Code §12-14-16 requires Municipalities to report procedures of municipal courts, and, same are required to report Uniform Crime Statistics.    State of Alabama has had and continues to have ample opportunity to order City of Roanoke Municipal Court to Cease unconstitutional illegal activities. Because State of Alabama has failed, they continue to violate US Constitution, and Alabama Code of 1975.

16. Every arrest by Roanoke Municipal Court, not bound to appropriate higher court, since enactment of Ala. Code of 1975 has been illegal. Every arrest (non-bound) by Roanoke Municipal Court since enactment of the Alabama Code of 1975 has been in violation of the United States Constitution. Every non-bound arrest since 1975 has violated citizen's constitutional and civil rights and may be deemed conspiracy under color of law to violate the constitution and right to jury.

**FACTUAL ALLEGATIONS -- UNLAWFUL ARREST OR DENTENTION**

17. Plaintiff was experiencing a problem of three years with a Georgia realtor, Frank Nelson, employed by REMAX Results, RE/MAX International. The Realtor had sold a property in which Plaintiff had recorded a perfected Lien, said property being further encumbered by state and federal court litigation[3]. After ignoring the valid encumbrance and selling the property, although being served the lien, Realtor continued to attempt to sell the property again. Nelson was closely advised in this illegal sale by the Atlanta Law firm of Morris Hardwick Schneider (sold title insurance despite lien). Roanoke Police informed the Realtor he should desist and "let the lawyers settle" the issue. The Realtor ignored police warnings and continued listing property. McCarley had complained repeatedly to the Corporate headquarters of RE/MAX by telephone and letter, with no results. (see supra Beauregard).

On the morning of the arrest, McCarley informed Realtor he had been reported to both the Georgia Real Estate Commission and the Alabama Real Estate Commission. Realtor proceeded to Roanoke Police headquarters and first contacted the Randolph County Sheriff who chose not to take action. Realtor then went to Roanoke City Hall and swore a warrant, accepted by Roanoke Municipal Court and Clerk Penny Holloway.

---

[3] ALMD 3:06 cv 00091

13

18.   At the conclusion of the events described (above) the defendants named in paragraph five(5) caused plaintiff McCarley to be carried in a Police Cruiser to the Roanoke Police Station and Jail located at 138 Chestnut Street, City of Roanoke, State of Alabama, and caused him to be there imprisoned.

19.   On his arrival at Roanoke Police Station at or about 12:40pm, McCarley was "booked" fingerprinted, mugshot, and then placed in a locked and barred jail cell there and was imprisoned approximately 2 hours.  Lt. Don Truitt, husband of co-conspirator Pat Truitt, supervised said arrest.

20. Throughout the 2 hour imprisonment, plaintiff:

a.   Was never brought before a Judge, Court, or Magistrate; and,
b.   was not informed of his right to an attorney; and,
c.   was not given required warning that any statement he made
     could be used against him in a court of law; and,
d.   Was not informed of privilege against self incrimination; and,
e.   was not informed of any formal charges that were to be placed
     against him by defendants, or by other person or persons.

Instead, plaintiff McCarley was detained and imprisoned as a result of the orders of the individual defendants and all of them on the purported justification that a valid warrant had been sworn and issued.  This imprisonment of plaintiff was caused to be committed by the individual defendants, and all of them.

21.   Throughout some or all of the period of plaintiff's imprisonment (on orders of defendants), the Municipal Court Judge was available for session in the City of Roanoke.

22.   At the conclusion of the 2 hour imprisonment, plaintiff McCarley was released from custody by defendant following plaintiff act of posting bond, and bond was posted in spite of the illegal charges, warrants, and arrest of plaintiff and court date was set.

22a.   Plaintiff filed a §1983 and §1985 (3:06 CV 663) complaint of these details with ALMD on July 22, 2006.  Upon knowledge of that

14

complaint and upon a new city prosecutor refusal to prosecute McCarley, City Judge Holiday recused and began an attempt to change venue. No further action would occur until ALMD dismissed original complaint without prejudice. Plaintiff demanded many subpoena and depositions and Alabama Rules of Criminal Procedure Rule 16.5 discovery, while demanding a Jury Trial. When plaintiff later requested court appointed attorney, the first attorney appointed reviewed details and attempted to get the replacement prosecutor to drop charges. Failing that attempt, the first attorney had to vacate due to his large caseload. The second attorney then ordered the City to issue the subpoena and other actions demanded by McCarley. Upon that order, a new Judge was appointed in lieu of change of venue and said new judge then appointed a third and fourth defense counsel. Not satisfied with the diligence of the new defenders, McCarley fired same and at court was "virtually ordered" by the new judge to use these defenders. McCarley agreed based upon a co-counsel approach. Upon opening action, Judge ordered that only one of the three defenders could question any witness, thus mooting McCarley co-counsel waiver.

22b. As the action unfolded, a SURPRISE WITNESS never disclosed was put on the stand. City of Roanoke failure to comply with McCarley Rule[4] demands thus prevented McCarley ability to dispute said SURPRISE WITNESS. In the Murray (supra) the court opinion also goes to discovery:

> "When plaintiff sustained violation of constitutional rights by being arrested and detained pursuant to invalid warrant, someone was surely at fault for failing to establish or execute appropriate procedures preventing such serious malfunction in the administration of justice and **plaintiff was entitled to discovery**."

This act further violated the 6th amendment to the US Constitution by violating the clause "compulsory process for obtaining witnesses in his favor." With this point, we accuse City of Roanoke of an act expected

only in the communist gulag.  McCarley had no inkling of how to prepare

defense counsel for this witness.  Said secret witness was a disgruntled

city employee who never should've been allowed to take the stand, per

supra Beauregard.   Secret witness had argued with McCarley over the

employees job performance[5].   Lastly, given any advance knowledge of

testimony as would've been gained from Rules based depositions, the

secret witness testimony would've been soundly IMPEACHED.

**COURT OPINION REGARDING SECRET WITNESS AND DISCOVERY**

**NOTES TO AMENDMENT VI (USCS note 1193)**

> "A defendant is entitled to have access to any prospective
> witness . . ." U.S. v. Brown, C.A.Ga. 1977, 555 F.2d 407

> "Prosecution has no right to interfere with or prevent a
> defendants access to a witness absent any overridin."g interest
> in security." U.S. v. Scott, C.A.Mich. 1975, 518 F.2d 261

> "Peoples late disclosure . . . did not deprive defendant of
> fair trial where People did not totally fail to disclose . . ."
> People v. Hernandez, N.Y.AD. 2 Dept.1993, 600 N.Y.S. 2d 491

Obviously, the secret witness incident totally fails the test of

disclosure and is therefore fully in failure of our constitution.   "In

the early case of UNITED STATES v. Aaron Burr, F.Cas. No. 14692d

(C.C.Va., 1807) Chief Justice Marshall discussed the right of Burr to

have, . . ." (discovery)

This point may be concluded fittingly with the following quote from

Alabama Rules of Criminal Procedure, Second Edition for Rule 16, authored

by former State Supreme Court Justice Hugh Maddox, (p.563).

> ". . . that discovery would help defendant prepare his
> defense and that the element of "surprise" or "trial by ambush"
> would be significantly lessened . . ." "The Court adopted Rule
> 18." " . . . but substantially Rule 16 is same as Temporary
> Rule 18."

---

[4]  Rule 16.5 Alabama Rules of Criminal Procedure
[5] Cutting down private landscape without permission

22c.   McCarley was convicted of a lesser offense (March 20, 2007) following his illegal arrest and imprisonment, and upon testimony of a secret witness.   Surely this court can now see the bias existing against McCarley on the part of the employees and City of Roanoke.

22d.   The REMAX realtor filing false and malicious charges had been warned by plaintiff that he was being reported to Alabama and Georgia Real Estate Commissions.   McCarley had also complained (2004, 2005, 2006) with RE/MAX International headquarters concerning this wayward agent. McCarley also talked with all those who came to view the disputed property to insure that innocent people understood the property was in litigation.   Because McCarley likely caused a problem for REMAX contract with HSBC, the largest provider of properties to REMAX, the agent and his firm joined the conspiracy against McCarley and are thus charged.

22e.   Thinking he should attempt one last effort at resolving this issue prior to a new Civil Rights complaint, McCarley attended a Roanoke City Council meeting (March 27, 2007) and requested closed session to discuss good name and character of a city employee.   Roanoke Chief of Police made the same request in advance of McCarley and had prepared the council for McCarley to discuss a different issue altogether.   And now this act by Roanoke Chief of Police has no other purpose than that of a further proof of an incredible conspiratorial bias against McCarley – and this from a police chief in which McCarley had confided evidence of serious criminal activity above and beyond this complaint.

**ALLEGATIONS AS TO DENIAL OF CIVIL RIGHTS**[6]

23.   Each of the individual defendants, separately and in concert, acted outside the scope of his jurisdiction and without authorization of law, and each of the individual defendants, separately and in concert

---

[6] See PubLaw 90-284, 90th Cong, HR 2516, 82 Stat 73.

defied the moral precepts built into the United States Constitution and the professional licensure precepts of the Alabama State Bar; and each of the individual defendants, separately and in concert, acted willfully, knowingly, and purposefully with the specific intent[7] to deprive and conspiracy to deny plaintiff of his right to:

        Obtain arrest warrant for wrongs against plaintiff; and,
        Petition the government for redress of grievances; and,
        Freedom from illegal seizure of his person, papers and effects; and,
        Freedom from unlawful arrest; and,
        Freedom from illegal detention/ and imprisonment; and,
        Release on own recognizance or reasonable bail; and,
        The timely and effective assistance and advice of counsel; and,
        A fair trial; and,
        Vote or run for office; and,
        Participate in or enjoy services of federal or state agencies; and
        Enroll in or attend any school; and,
        Enjoy facilities or establishments in interstate commerce; and,
        Life, Liberty, and the pursuit of happiness; and,
        Due Process of Law, and Trial by Jury; and,
        Disclosure of Witnesses and evidence to be used against him.

All of these rights are secured to plaintiff by the provisions of the First Amendment and the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 United States Code Section 1983 and Section 1985, and by Title 18 United States Code Section 245 (1968).

    At all times material to this conspiracy complaint, defendants and Co-conspirator's were employed-elected-or appointed as officers of the Alabama Department of Revenue, State of Alabama; or, were duly employed, elected, or appointed and acting officers for functions of The City of Roanoke and were acting under color of their official capacity, and their acts were performed under color of statutes of the State of Alabama. Department of Revenue defendants were the servants, agents, and employees of their codefendant, the State of Alabama and Alabama Department of

---

[7] Am Jur Trials 15:649 Footnote 13:  It is not necessary to plead specific intent .
. . to state federal claim under §1983; Monroe v Pape (1961) 365 US 167, 5 L Ed 2d

Revenue, so that their acts are imputed to the State of Alabama; and further, defendants and Co-conspirators acts were under color of law.

Roanoke based Co-Conspirators were servants, agents, and employees of co-defendant, The City of Roanoke, the State of Alabama, so that their acts are imputed to City of Roanoke and State of Alabama; and further, Co-conspirators acts were under color of law of the State of Alabama.

Out of State defendants and Co-Conspirators were servants, agents, and employees of co-defendant, REMAX Results and RE/MAX International, or the Law Firm Morris Hardwick Schneider, so that their acts are imputed to their employer and State of Alabama; and further; all acts were under color of law of the State of Alabama.

**ALLEGATIONS AS TO DENIAL OF CIVIL RIGHTS, CONSPIRACY TO DENY CIVIL RIGHTS LEADING TO CONSPIRACY**

24a) George McCarley statewide political success of while politic-ing and leading (1988-1989) the movement to elevate public outreach, athletic performance, and endowment funding at Jacksonville State University. The effort was sufficiently well received that two other universities in state, Troy, and UAB quickly implemented similar efforts. McCarley efforts on this count were considered as a "fly in the ointment" by the Alabama political power structure.

b) While engaged in the above, McCarley was asked by JSU officials to visit a young Circuit Judge to determine the fit as a member of the JSU Board of Trustees. Such activity is largely frowned upon by the Alabama Senate, and became considered just another fly in the ointment.

c) McCarley 1990 letter to Secretary of State Billy Joe Camp questioned twelve points of local election irregularity. Secretary Camp advised twelve different states offices had responsibility; a different

492, 81 S Ct 473

officer having responsibility for each of the twelve points questioned. The SOS office provided McCarley a copy of the current state election code. McCarley served as Poll Watcher in the ensuing election(s) and upon noting many irregularities in the Roanoke voting hall, he notified local media and in the runoff, the small TV station from neighboring LaGrange, Georgia aired a news story featuring McCarley analysis of the problems, from seriously faulty and failure prone mechanical voting machines, to non-code handling of returns to the County Courthouse. Indeed, all the voting machine failures noted on that and subsequent cycles were in favor of the dominant political party.

d) In the general election in November; observation of the votecount at county courthouse revealed a common and non-audited problem capable of changing the outcome of any close election. The requirement that teams of people transpose and summarize the outcome from the mechanical voting machines led to mis-transposed numbers -- while a human error, yet always in the favor of the predominant party. A clerical problem occurred during one of those later vote counts. Chief Justice Perry Hooper was initially declared the loser by a narrow margin. McCarley's Randolph audit showed a vote transposition error had cost Justice Hooper nine votes. These findings and subsequent election challenge resulted in Justice Hooper being declared the winner. The result of these Poll Watching exercises, along with McCarley's growing political accomplishment and the University success clearly embarrassed the opposite power structure, at local, county, and statewide level.

e) McCarley launched his first bid for Mayor of Roanoke in 1992, on a reform, accountability, and industrial development platform, and while losing, he was a factor in unseating the incumbent Mayor Henry Bonner. The lack of results in local industrial recruiting continues to strangle

Roanoke and Randolph County, with said industrial development being a natural application of the career results of McCarley. In simplest common denominator, Roanoke boasted some 2200 industrial jobs in 1910, attested by back issues of the local newspaper. Today in 2006, that job number has constantly eroded to some 700 industrial jobs.

f) Former Mayor Betty Ziglar won the 1992 election and just prior to the 1996 local election, purchased one of the original electronic vote scanners used in Alabama. In fact, <u>Tuscaloosa County</u> purchased the same system, along with Mobile. McCarley was asked to review the new scanner and granted his approval. He duplicated the 1992 campaign and lost again to Betty Ziglar in 1996. Three additional dire issues became McCarley platform points. In addition to those mentioned above, the issues of Accountability and of Schools performance demanded new and more dramatic debate, along with continued voting abuses.

1) Accountability became key on two points. First, the court must understand Alabama Law requires Municipalities to publish Budgets and Financial pro forma's(Al §11-43a-27, 29, 94). The Ziglar administration never published nor produced such statements, in full violation of state law. Second, it was noted that the previous Mayor had left the city with $300,000 in certificates of deposit and a balanced checking account. This was a notable accomplishment considering annual revenue in the $3 million range. There was no way to politic this issue but to suggest irregularity by Mayor Ziglar and the City Manager defendant Ellen Farmer and staff.

2) At this time, State of Alabama began statewide testing of students and the Roanoke results indicated seriously sub-par performance. Mayor Ziglar and supporters were concentrating on an attempt to destroy sound and "paid-off" buildings, demolishing same

and building new in the same location. Even when notified of Architects and Engineering firms who could fully renovate existing buildings for one third the new cost, the Ziglar administration proceeded to destroy historic school buildings and saddle taxpayers with a cost three times as high as necessary. When it was decided to build a third campus for Middle School, a former councilman engineered a sale of land to increase his real estate value, while City Attorney (defendant) Oliver Kitchens attempted to sell a parcel of land owned by him. This type ethics violation was further platform fodder for McCarley and this court may see the resulting negative impact on McCarley via this complaint.

3) Of note was a vote count irregularity. In the small town of Roanoke, with all voting locations within a 15 minute walk of City Hall, amazingly, and given the electronic scan counters at all 5 polling places, one location still required some two hours to be returned to City Hall, thus presenting even more dramatic issues to be used against the city administration in coming campaigns. City Manager Ellen Farmer was the default elections chief.

g) An issue under seal occurred about 10 weeks following the Roanoke Municipal election of 1996. Plaintiff McCarley was about to be married for the first time, only to have his fiancé "die" under mysterious circumstances. This "death" occurred in <u>Tuscaloosa County</u>. This issue should remain under seal until reviewed for appropriate inclusion in this complaint. We will provide evidence of an ongoing and FBI investigation involving Mafia influenced sale of voting machines originating in Birmingham, Alabama (about time of McCarley complaint about localized voting machine deficiencies likely making McCarley a target).

h)  McCarley made his final Mayor's race in 2000, won again by Mayor Ziglar.  Given the Ziglar failure to perform or improve on any of the issues raised by McCarley, a further serious platform issue was presented by the Ziglar administration in the form of creating one of the highest municipal tax structures in the state of Alabama.  Citizens now pay 8.5 cents sales tax in the city of Roanoke.  Additionally, all possible non-tax fees from garbage disposal to business licensing and Court fees were created and increased in order to provide more money for this administration to spend.  Budgets and financial pro forma's had never complied with state law.  The negative results of these taxes could be seen immediately in the declining population of merchants in Roanoke.

i)   From 1998 through 2001, Plaintiff McCarley gained membership to The Presidential Roundtable, said membership granting access to high level politicians in Washington DC.

j) Building upon his growing political capital, plaintiff McCarley, undertook three highly successful Washington, DC lobbyist efforts;

1)  A Missionary and relief journey to Albania in April 1999 exposed McCarley to the many atrocities of the Bosnian war.  Returning to DC, McCarley embarked on a whirlwind effort on Capitol Hill to insure Representatives and Senators were cognizant of the situation.  McCarley's effort preceded the return of six US Senators and paved the way for humanitarian relief.

2)  Noting the shift away from Bill of Rights, McCarley packaged a simple presentation that served to "reframe" the debate to one of "no more new laws until we enforce the present laws."

3)  In 2001, McCarley success in DC was noted by a request that he assist a US Army re-authorization effort of the most successful Human Rights efforts measured.  The effort is administered by the

US Army, as a program of President John Kennedy. McCarley efforts on Capitol Hill again, served to reverse votes and successfully continue operation of the school.

This Court should now see the two-decade pattern of McCarley building political success by working his away around established power structures only to suffer retaliatory acts of conspiracy.

**OVERT ACTS OF THE CONSPIRACY**

25.    a) Ziglar administrations most notable act was the 1997 implementation of a Nuisance Ordinance that only became a means to harass McCarley voters and supporters. Defendants, Judge Holliday and City Attorney Kitchens were key to implementation and execution of these harassment actions. McCarley spoke loudly and often against the ordinance, including TV coverage. This continued during Ziglar tenure.

b) Prior Mayor Bonner was appointed to City Utility Commission about 1996. Then in early 1999, McCarley was presented a city "water bill" for one month totaling some $400. This volume of water would prove enough to fill an Olympic size competition pool.

c) In 2001, the City issued a nuisance violation to the sister of George McCarley. Close inspection of that property demonstrated NO VIOLATION of ordinance. (pictorial evidence) Feeling it not worth the headache, sister intended to simply find out the penalty and pay the fine. When City Clerks informed her she was required to come before a judge and that the fine could be up to $500, McCarley realized all the fuss about the expanded City Court was a real problem. When the sister appeared before the judge only to be "released" without charge - action - or argument, McCarley gained evidence of clear malice exercised against him by many means. A 2006 subpoena provided proof the Judge had in fact marked his sisters record as GUILTY. Again, Judge Holliday and City

Attorney Kitchens were responsible for allowing this action. This instance also provided new platform points dealing with abuse of Prosecutorial and Judicial discretion, plus, helping to prove the fact that City Court serves more for purposes of revenue generation than for justice. In fact, almost all charges prosecuted in City Court are required to physically appear -- therefore allowing the City to earn the rich Court Costs associated. (This District Court should be aware the Ziglar tenure built the city police force up from eight (8) officers, to twenty-eight (28), and there has been no increase in city population.)

d) One act of the Ziglar administration of note between 1996 and 2000 was naming of the local National Guard building in honor of a Charles Clack, a local career guardsman. Charles Clack (co-conspirator) will commit an overt act on Election Day 2000.

e) The 2000 City election cycle commenced quickly thereafter. Alabama has long listed two distinct city election cycles in election code, having qualification dates close together. Roanoke had traditionally followed one date, only to shift to the other qualification date in 2000. While McCarley was in Pennsylvania cramming to project completion, he received a phone call from a supporter asking, "why didn't you come and qualify?" Therefore, and knowing that McCarley was out of town, the city switched qualification dates in order to prevent McCarley qualifying for another Mayoral race. This act was the result of actions taken by Mayor Betty Ziglar and City Manager Ellen Farmer.

f) McCarley ran a "Write-in" campaign. Then, it was discovered that the optical scanning machines purchased by Mayor Ziglar would not accept "write-in" votes, clearly violating the constitution. As a final media campaign, McCarley ran ads informing citizens they should inform the polling workers to collect the manually written McCarley votes for a

manual count.   This was refused by all poll workers.   In fact, it was
Charles Clack who personally refused to accept the vote cast by George
McCarley.   The city subsequently refused to count McCarley votes that
would've surely led to a run-off. Oliver Kitchens represented the City of
Roanoke against the McCarley election challenge.   Plaintiff will provide
evidence that at one point, defendant Kitchens quoted outdated statutes
to the Court while making responsive pleadings.   Quite obviously, the
City of Roanoke and all of them (defendants and co-conspirator's)
conspired to violate and did violate the Constitutional and Civil Rights
of George McCarley along with the same rights of all the citizenry of
Roanoke by their overt refusal to count votes.   The Alabama Attorney
General in 2000 was Bill Pryor, and General Pryor issued an opinion that
Roanoke was within their rights not to count all votes.   Considering
three distinct opinions of the Supreme Court of the United States clearly
uphold the mandate that all votes are to be counted, McCarley may have
cause to name Appellate Justice Bill Pryor as co-conspirator.

g) In 2001, a McCarley business project to Madrid, Spain was cut short
by ETA separatist warfare.   Due to obvious trauma of that fourth exposure
to unexpected warfare, McCarley neglected to renew an auto license plate
decal upon his return to the states.   Being ticketed by Roanoke City
Police, he was scheduled for a mandatory visit to night court to learn of
the charges.   In the hours preceding night court, he learned his sister
had   been   hospitalized   in   a   neighboring   town   due   to   surgical
complications.   He called the Clerk Defendant Pat Truitt to report the
problem and request a continuance so that he could care for this family
matter.   McCarley was informed that the city did not grant continuance
and he was expected to appear or a bench warrant would be issued.

h) Defendant Sanford Holliday in violation of Ala. Code of 1975 issued a bench warrant. McCarley was swarmed by four (4) police officers and arrested. (If the court will picture an individual who has served missionary duty to war zones and made multiple runs for public office, then picture that same individual being swarmed by (4) police officers for failure to buy a license plate decal, you will understand the charges of Prosecutorial and Judicial abuse in this case.)

i) An event unfolded in 2004, beginning five months in advance of the qualification deadline for Municipal elections. A foreign bank illegally foreclosed McCarley. McCarley protested in Randolph County Circuit Court. McCarley complaint in that matter consists of proving bank violations of federal and state consumer protections found in 15 USC 1601 et seq., 12 USC 2501-2520. McCarley arrived at the initial court hearing to find the bank represented by City Attorney and defendant Oliver Kitchens. At one point, growing closer to election qualification deadline, Kitchens was granted a continuance of 30 days that had no other intent than to keep McCarley out of the 2004 Mayor's race.

j) On November 30, 2005, plaintiff McCarley lost his oldest and closest friend for life due to untimely death. Of note to this conspiracy, the friend had met a new girlfriend almost on the ten-year anniversary of the untimely death in Tuscaloosa. Details of his brief romance almost mirrored the details of McCarley in the Tuscaloosa case.

k)    About two days following the burial of friend,

l)    Plaintiff received a notice from the Alabama department of Revenue (DOR) demanding payment of back taxes.

1) Notice came in Holiday mail rush, denying legal response time.

2) It was clear from information provided that a strong oversight had occurred and at worst, someone was playing games.

3) Even casual observation of the data presented leads to the conclusion that no taxes could possibly be owed. McCarley informed them of his suspicions and promised charges if they persisted, which they did.

4) McCarley listed deductions ten times the value of the DOR claim.

5) DOR denied McCarley a statutory hearing and the matter went to Administrative Review. They ignored McCarley data and demanded all McCarley records. When he informed them the same records were required in 3:06 cv 00091, they demanded them anyway.

6) Letter denying hearing arrived the weeks prior to 2006 primary.

7) The DOR actions are consistent with the conspiracy to deny McCarley the right to participate in election cycles and further, to destroy his reputation in a manner deleterious to political and professional activity. As a direct result, Plaintiff names the DOR officials listed as Co-conspirators. Plaintiff alleges DOR officials named, each and all of them have participated as co-conspirator's against him.

m) On June 9, 2006, McCarley was arrested yet again, leading to this civil rights and conspiracy charge. On a frivolous matter, an individual has falsely and frivolously sworn an arrest warrant. When the Randolph County sheriff refused, the individual went to Roanoke Court and was granted the warrant. Co-conspirators refused McCarley a warrant for countercharges of vandalism and trespass against the other person.

The most succinct summary of conspiratorial acts is the realization that instead of being gracious winners and inviting McCarley to assist with his proven talents, the overt acts of indicate both local and statewide political leaders joined the conspiracy to destroy McCarley.

**ALLEGATIONS AS TO DAMAGES**

26. As a direct and proximate result of the aforesaid acts of the individual defendants ad co-conspirators, and each of them, plaintiff suffered great pain, injury and mental anguish, from then until now, and will continue so to suffer in future; and he has lost and will in future lose large sums of money by reason of being humiliated and held up to public scorn and derision as a result of foregoing acts of defendants. Plaintiff will continue to be affected by and suffer losses from:

> Damage to 4 generations of family reputation in Randolph
>     County; and,
> Damage to personal reputation; and,
> Damage to 30 years of Professional reputation; and,
> Damage to 20 years of Political aspirations; and,
> Loss of property; and,
> Loss of professional job opportunity; and,
> Loss and substantial injury to Professional income; and,
> Slander; and,
> Loss of Freedom.

This complaint provides detail of the political accomplishments of Plaintiff. Such accomplishments, along with an ongoing Corporate Turnaround business boasting 14 successful turnarounds, absolutely demand that such individual has a publicly searchable record free of the blemish of charges just such as City of Roanoke has now illegally imposed. Therefore, and owing to the due process denial and civil rights violations imposed on McCarley, defendants have imposed a giant roadblock to the ongoing career of plaintiff. In this era in which eighty percent of corporate employers openly advise that thorough background checks will be conducted prior to interviews and employment, such actions as imposed by City of Roanoke are a near death sentence. It is the Due Process denied by City of Roanoke that has created this situation of misery. The true impact on professionals arrested in such frivolous manner can only be likened to the City Roanoke committing felony on plaintiff.

**§1983 Damages Detailed**

Wherefore plaintiff demands judgment against the defendants and each of them, jointly and severally, in the amount of five thousand ($5000) for each defendant and he further demands punitive damages against the defendants, and each of them, jointly and severally, in the amount of five thousand ($5000) for each defendant, per year of violation(s). Further, plaintiff demands judgment against REMAX Results an amount twice that adjudged Frank Nelson and plaintiff further demands judgment against RE/MAX International an amount twice that adjudged Nelson and Remax Results; and further plaintiff demands judgment against Morris Hardwick Schneider equal to the total adjudged Nelson, Remax Results and RE/MAX International.

(a) For judgment against City of Roanoke, a municipal corporation of State of Alabama, for an additional sum the amount of any judgment that may be rendered against the defendants Henry Bonner, Sanford Holliday, Oliver Kitchens, Ellen Farmer, and Penny Holloway Roanoke Police Department, in the amount of Sixty thousand ($60,000). For judgment against David Avery and Bill Thompson in the amount of twenty thousand ($20,000). For judgment against Frank Nelson ($30,000), Remax Results ($60,000), Remax Internations ($180,000), and Morris Hardwick Schneider ($270,000), in the amount of Six Hundred Twenty Thousand ($620,000).

(b) For a joint and several judgment against the City of Roanoke, a municipal corporation in the State of Alabama, and the defendants, Henry Bonner, Sanford Holliday, Oliver Kitchens, Ellen Farmer, Roanoke Police Department and Penny Holloway, David Avery and Bill Thompson, in the amount of Sixty Thousand ($60,000) dollars, net of expenses and costs.

(c) For judgment against the State of Alabama, an amount equal to that assessed the individual defendant and City damages, for a sum in the

amount of Seven Hundred Thousand ($700,000), plus cost of this action; and other relief as to this Court seems just, proper, and equitable.

**§1985 Damages Detailed**

Wherefore, plaintiff demands judgment against the defendants and co-conspirator's and each of them, jointly and severally, in the amount of Five Thousand ($5000) for each year of conspiracy in which a defendant or co-conspirator, and each of them participated, and he further demands punitive damages against the defendants and co-conspirator, and each of them, jointly and severally, in the amount of Five Thousand Dollars ($5000) for each year of conspiracy. Further, plaintiff demands judgment against REMAX Results ($60,000) an amount twice that adjudged Frank Nelson ($30,000) and further demands judgment against RE/MAX International ($180,000) an amount twice that adjudged Nelson and Remax Results; and further demands judgment against Morris Hardwick Schneider ($270,000) equal to total adjudged Nelson, Remax Results and RE/MAX International.

(a) For judgment against the City of Roanoke, a municipal corporation of the State of Alabama, for an additional sum in the amount of any judgment that may be rendered against the defendants Henry Bonner (8 years), Sanford Holliday (6 years), Oliver Kitchens (8 years), Ellen Farmer (8 years), Pat Truitt (4 years), Roanoke Police Department (6 years), and Penny Holloway (4 years) in the amount of Four Hundred Forty thousand ($440,000). For judgment against David Avery and Bill Thompson in the amount of twenty thousand ($20,000). For judgment against Frank Nelson, Remax Results, Remax Internations, and Morris Hardwick Schneider, in the amount of Five Hundred Forty Thousand ($540,000); plus an additional sum in the amount of any judgment that may be rendered against the co-conspirator's, Betty Ziglar (8 years), Charles Clack (6 years),

31

Carol Knox (1 year), James Griggs (1 year), Sylvester Cannon (1 year), G. Thomas Surtees (1 year), and Cynthia Underwood (1 year), under the §1985 complaint; in the amount of  One Hundred Thousand ($190,000).

(b)  For joint and several judgment against City of Roanoke, a municipal corporation in State of Alabama, and the defendants, Henry Bonner, Sanford Holliday, Ellen Farmer, Pat Truitt, Roanoke Police Department, and Penny Holloway in the amount of Four Hundred Forty Thousand ($440,000); and, for joint and several judgment against co-conspirators, Betty Ziglar, Charles Clack, Carol Knox, James Griggs, Sylvester Cannon, G. Thomas Surtees, and Cynthia Underwood, in the amount of, One Hundred Ninety Thousand ($190,000), and for judgment against City of Roanoke One Hundred Ninety Thousand ($190,000), for a total of Three Hundred Eighty Thousand ($380,000) dollars, net of costs and expenses.

(c)  For §1985 judgment against the State of Alabama, for a sum in an amount equal to any judgment that may be rendered against the defendants and co-conspirators; for a total of One Million Four Hundred Forty Thousand ($1,440,000) dollars, net of costs and expenses, plus the cost of this action; and plaintiff further demands such other relief as to this Court seems just, proper, and equitable.

27.  On or prior to 20 March, 2007 in the City of Roanoke, State of Alabama, the individual defendants, and each of them, in violation of 42 United States Code §1983 and §1985 did with other person or persons whose names are presently unknown to plaintiffs; did act and conspire to deny rights, for the purpose of hindering, impeding, obstructing, or defeating the due course of justice in the State of Alabama, and with intent to deny to plaintiff McCarley the Civil Rights guaranteed by the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States (R.S. 1979, 42 USC §1983 and §1985) and arising under the law and

statutes of the State of Alabama, because of plaintiff's personal convictions, free speech actions, and to injure plaintiff McCarley for lawfully attempting to obtain his rights under the Constitution and laws of the United States to the equal protection of the laws.

28. In furtherance of the object of said Civil Rights Violation(s), one or more defendants did do or cause to be done the acts set forth in this complaint, and in violation of Title 42 United States Code §1983 and §1985 (denial of civil rights), did thereby injure and conspire to injure plaintiff McCarley in his person and deprive him of having and exercising his rights and privileges under the Constitution and laws of the United States and the Constitution and laws of the State of Alabama.

Wherefore plaintiff McCarley claims §1983 damages (total) in the amount of One Million Three Hundred Eighty Thousand dollars ($1,380,000) and plaintiff McCarley claims §1985 damages in the amount of Three Million Six Hundred Forty Thousand ($3,640,000) against the defendants and co-conspirator's, and each of them, jointly and severally, and costs.

G. M Carley

George McCarley
216B Chestnut Street
Roanoke, Al  36274
Dated April 10, 2007 ---- (Pro Se for Plaintiff)

33

**CERTIFICATE OF SERVICE**

I, George D. McCarley do swear that on this date, April 10, 2007 as required by Supreme Court Rule 29, I have served the enclosed In Forma Pauperis COMPLAINT on each party to the above proceeding, or that party's counsel, and on every other person required to be served, by depositing envelope containing the above documents in the United States mail properly addressed to each of them and with first class postage prepaid, or by hand delivery to local parties for delivery within 3 calendar day.

**Postal Delivery**

The Clerk
Middle District of Alabama
United States Courthouse
One Church Street, PO Box 711
Montgomery, Al  36101-711
334-954-3600

Alabama Attorney General
  Troy King
  11 South Union
  Montgomery, Al  36130


G. Thomas Surtees, Commissioner
Alabama Department of Revenue
PO Box 327450
Montgomery, Al  36132-7450

City of Roanoke
809 Main Street
Roanoke, Alabama  36274

For Service To:

For Service to:                          Mayor Henry Bonner
G. Thomas Surtees                        Ellen Farmer
Cynthia Underwood                        Penny Holloway
Carol Knox                               Pat Truitt
James Griggs                             Sanford Holliday
Sylvester Cannon                         Oliver Kitchens
David E. Avery, III                      Charles Clack
Bill Thompson                            Betty Ziglar


Geoff Lewis Chief Legal Officer
RE/MAX INTERNATIONAL, Inc.               Frank Nelson
5075 S. Syracuse Street                  REMAX RESULTS
Denver, Colorado   80237                 1510 Lafayette Parkway
                                         LaGrange, Georgia, 30241
Morris Hardwick Schneider(Arthur Morris)
7000 Central Parkway
Suite 1220
Atlanta, Georgia 30328

I declare under penalty of perjury that the foregoing is true and correct

Executed on April 10, 2007.

George D. McCarley

| 1983 DEFENDANT | Years involved | DAMAGES DEMANDED per years of involvment | | State Damages Double City + Individual | |
|---|---|---|---|---|---|
| | | Individual | City | State | Total |
| Henry Bonner | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Sanford Holliday | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Oliver Kitchens | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Ellen Farmer | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Penny Holloway | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Roanoke Police Dept | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| David E. Avery, III | 1 | $10,000 | $0 | $20,000 | $30,000 |
| Bill Thompson | 1 | $10,000 | $0 | $20,000 | $30,000 |
| Frank Nelson | 3 | $30,000 | $0 | $30,000 | $60,000 |
| REMAX Results | 3 | $60,000 | $0 | $60,000 | $120,000 |
| REMAX Intl | 3 | $180,000 | $0 | $180,000 | $360,000 |
| Morris Hardwick Schneider | | $270,000 | | $270,000 | $540,000 |
| Troy King for State of Alabama | | $620,000 | $60,000 | $700,000 | $1,380,000 |
| | | | | | |
| **1985 Defendant** | | | | | |
| | | | | | |
| Henry Bonner | 8 | $80,000 | $80,000 | $160,000 | $320,000 |
| Sanford Holliday | 6 | $60,000 | $60,000 | $120,000 | $240,000 |
| Oliver Kitchens | 8 | $80,000 | $80,000 | $160,000 | $320,000 |
| Ellen Farmer | 8 | $80,000 | $80,000 | $160,000 | $320,000 |
| Penny Holloway | 4 | $40,000 | $40,000 | $80,000 | $160,000 |
| Pat Truitt | 4 | $40,000 | $40,000 | $80,000 | $160,000 |
| Roanoke PD | 6 | $60,000 | $60,000 | $120,000 | $240,000 |
| David E. Avery, III | 1 | $10,000 | $0 | $10,000 | $20,000 |
| Bill Thompson | 1 | $10,000 | $0 | $10,000 | $20,000 |
| Frank Nelson | 3 | $30,000 | $0 | $30,000 | $60,000 |
| REMAX Results | 3 | $60,000 | $0 | $60,000 | $120,000 |
| REMAX Intl | 3 | $180,000 | $0 | $180,000 | $360,000 |
| Morris Hardwick Schneider | | $270,000 | | $270,000 | $540,000 |
| | | $1,000,000 | $440,000 | $1,440,000 | $2,880,000 |
| **1985 Co-conspirators** | | | | | |
| | | | | | |
| Betty Ziglar | 8 | $80,000 | $80,000 | $160,000 | $320,000 |
| Charles Clack | 6 | $60,000 | $60,000 | $120,000 | $240,000 |
| Carol Knox | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| James Griggs | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Sylvester Cannon | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| Cythia Underwood | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| G. Thomas Surtees | 1 | $10,000 | $10,000 | $20,000 | $40,000 |
| | | $190,000 | $190,000 | $380,000 | $760,000 |
| | | | | | $5,020,000 |